# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

|  |  |
|---|---|
| SYDNEY MIZELLE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| NATIONAL CASUALTY COMPANY, | ) |
|  | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND JURY DEMAND

Comes now Plaintiff Sydney Mizelle, by counsel, and for her Complaint for Declaratory Judgment against Defendant National Casualty Company, states and alleges as follows:

## I. INTRODUCTION

This Complaint seeks a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201. Plaintiff seeks a declaration that Defendant National Casualty Company had a duty to defend and indemnify Capital Area Swim Team in relation to the allegations made against it by Sydney Mizelle in the matter of *Father Doe, et al. v. USA Swimming, Inc., et al.*, Wake County Superior Court, North Carolina Case No. 18CV010774 (the "Underlying Lawsuit").

## II.  PARTIES

1.  Plaintiff Sydney Mizelle is a natural person, citizen of the United States, and a resident of North Carolina. Ms. Mizelle was a plaintiff in the Underlying Lawsuit; because she was a minor at the time, she was identified as Daughter Doe One. Ms. Mizelle may be served through her attorneys whose contact information appears below.

2.  Defendant National Casualty Company ("National") is a for-profit insurance company domiciled in Ohio. National underwrote the insurance policies applicable to the Underlying Lawsuit and denied Capital Area Swim Team a defense and indemnification. National may be served through its Registered Agent, Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, OH 43215.

## III.  JURISDICTION AND VENUE

3.  Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00.

4.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claim occurred in this judicial district.

5.  The claims herein are timely filed and all jurisdictional and other prerequisites to this action have been fulfilled.

## IV.  FACTS

### A.  The Underlying Lawsuit

6.  The Underlying Lawsuit was filed on August 30, 2018, naming USA Swimming, Inc., Titan Fitness North Carolina, LLC d/b/a Fitness Connection, Nathan

2

Weddle (individually and as d/b/a CAST), and Shannon Foster (individually and as a CAST employee) as defendants.

7. The Underlying Lawsuit alleged that Nathan Weddle had repeatedly sexually, physically, psychologically, and emotionally abused Ms. Mizelle from around August 2017 through December 2017. (The Complaint is attached hereto as Exhibit A and incorporated herein by reference)

8. Weddle and CAST were named insureds under at least Policy Numbers KKO0000006603800 (the Commercial General Policy) and XKO0000006603900 (the Commercial Excess Policy) (together, the "Policies"), issued by Defendant National Casualty Company, and covering the relevant time frame (01/01/17 to 01/01/18). (The Policies are attached hereto as Exhibit B and incorporated herein by reference.)

9. Defendant National Casualty Company refused to defend Weddle and CAST in the underlying lawsuit, despite their duty to do so.

10. Mr. Weddle was Ms. Mizelle's swim coach and groomed and abused her from that position of trust and power.

11. At all relevant times, Ms. Mizelle was an athlete member of USA Swimming, the National Governing Body ("NGB") for the sport of swimming in the United States.

12. At all relevant times, Mr. Weddle was a coach member of USA Swimming.

13. At all relevant times, CAST was a USA Swimming-affiliated swim club.

14. By the time the Underlying Lawsuit was tried to a jury (beginning on or about May 2, 2022), Titan Fitness North Carolina, LLC had settled out of the case.

3

15. On May 18, 2022, the jury returned a verdict as follows:

a. USA Swimming – Not liable

16. Mr. Weddle, to avoid further proceedings as an incarcerated, *pro se* party consented to entry of a judgment in against him in the principal amount of $10 million. That judgment was entered on June 16, 2022.

17. Defendant National Casualty Company refused to indemnify Weddle and CAST, and did not provide a defense to Weddle, his assistant coach Shannon Foster, or CAST at any point in the underlying lawsuit.

18. Defendant National Casualty Company has not paid Ms. Mizelle any part of the judgment awarded to her.

19. During the course of trial, Ms. Mizelle offered to settle for $1 million which she understood to be the policy limits of the Commercial General Policy.

20. Defendant refused to make any payment to Ms. Mizelle, or make a counter-offer.

21. Mr. Weddle is incarcerated for the crimes he perpetrated against Ms. Mizelle and has no assets with which to pay the judgment.

22. Mr. Weddle assigned his rights under the policy to Ms. Mizelle on June 16, 2022 as part of the judgment in the underlying action, a copy of which is attached as Exhibit C.

## B. The Applicable Policies

23. The policies that are applicable to the underlying action are attached as Exhibit B to this Complaint; notable excerpts from the polices are reproduced below:

4

24. National Policy Number KKO0000006303800 (the "800 Policy" or the "CGL Policy") covered the following Named Insureds:

> **Policy No.** KKO0000006603800
> **Previous Policy No.** KKO0000005842600
>
> **NAMED INSURED AND ADDRESS:**
> USA SWIMMING, INC.
> DBA: USA SWIMMING (SEE KR-SP-1)
> ONE OLYMPIC PLAZA
> COLORADO SPRINGS, CO 80909

[Ex. B, p. 114]

25. The referenced KR-SP-1 further identifies the Named Insureds:

> **Policy No.** KKO0000006603800        **Declarations Extension**
>
> THE NAMED INSURED, WHEREVER IT MAY APPEAR THROUGHOUT THE POLICY, SHALL READ AS FOLLOWS:
> USA Swimming, Inc. d/b/a USA Swimming, USA Swimming Local Swimming Committees (defined as administrative division of USA Swimming, Inc. with supervisory responsibilities within certain geographic boundaries designated by USA Swimming, Inc.), USA Swimming Foundation, Inc.
>
> USA Swimming, Inc. member clubs in which all athletes or participants and coaches are members of USA Swimming, Inc., group members, member coaches, and officials solely as respects insured activities for which a group member has received approval from USA Swimming, Inc. or its authorized representative.

[Ex. B, p. 116]

26. The CGL Policy contains the following endorsement:

5

**National Casualty Company**

**ENDORSEMENT NO.** __0000__

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000006603800 | 01/01/17 | USA SWIMMING, INC. DBA: USA SWIMMING (SEE KR-SP-1) | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEXUAL ABUSE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury," arising out of the insured's business description as shown in the Declarations, to any person for sexual abuse, sexual molestation, sexual exploitation or sexual injury. It is further agreed that for the purpose of coverage provided by this endorsement, the following applies:

   A. With respect to this endorsement, "personal injury" means bodily injury including mental injury, mental anguish, humiliation, shock, sickness, disease, disability, or sexual dysfunction.

   B. The most we will pay for damages is limited to:

   $ 1,000,000  Per person sexually abused, sexually molested, sexually exploited or sexually injured, regardless of the number of incidents involving that person.

   $ 5,000,000  Aggregate per policy period. The Aggregate Limit is the most we will pay for damages regardless of the number of (a) insureds, (b) claims made or suits brought or (c) persons or organizations making claims or bringing suits.

   The Aggregate Limit stated above shall be a part of and not in addition to the General Aggregate Limit as stated in the Commercial General Liability Coverage Part Supplemental Declarations.

   The Limits of Insurance stated herein shall not be cumulative with any Limits of Insurance stated elsewhere in the policy for "personal injury" or "bodily injury."

   C. Multiple incidents of sexual abuse, sexual molestation, sexual exploitation or sexual injury to one person, whether consisting of one or any combination of incidents shall be deemed to be one occurrence and shall be subject to the coverage and limits in effect at the time of the first incident even if some of the incidents take place after expiration of this policy.

   D. **WHO IS AN INSURED** shall not include any person that personally participated in committing any sexual abuse, sexual molestation, sexual exploitation or sexual injury or who failed to take action to prevent recurrence after having personal knowledge of any sexual abuse, sexual molestation, sexual exploitation or sexual injury.

[Ex. B, p. 165]

27. National Policy Number XKO0000006303900 (the "900 Policy" or the "Excess Policy") covered the following Named Insureds:

6

**ITEM 1. NAMED INSURED(S) and Mailing Address**

USA SWIMMING, INC.
DBA: USA SWIMMING (SEE KR-SP-1)
ONE OLYMPIC PLAZA
COLORADO SPRINGS, CO 80909

[Ex. B, p. 2]

28. The referenced KR-SP-1 further identifies the Named Insureds:

**Policy No.** XKO0000006603900                                  **Declarations Extension**

The Named Insured, wherever it may appear throughout the policy, shall read as follows:

USA Swimming, Inc. d/b/a USA Swimming, USA Swimming Local Swimming Committees (defined as administrative division of USA Swimming, Inc. with supervisory responsibilities within certain geographic boundaries designated by USA Swimming, Inc.), USA Swimming Foundation, Inc.

USA Swimming, Inc. member clubs in which all athletes or participants and coaches are members of USA Swimming, Inc., group members, member coaches, and officials solely as respects insured activities for which a group member has received approval from USA Swimming, Inc. or its authorized representative.

[Ex. B, p. 8]

29.     Under the above definitions, Nathan Weddle is a Named Insured.

30.     Under the above definitions, Capital Area Swim Team is a Named Insured.

31.     The Excess policy includes this Exclusion:

7

**POLICY NUMBER:** XKO0000006603900

**COMMERCIAL EXCESS LIABILITY**
CX 21 11 04 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – ABUSE OR MOLESTATION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverages:**

**2. Exclusions**

Insurance provided under this Coverage Part does not apply to "injury or damage" arising out of:

**a.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

**b.** The negligent:

**(1)** Employment;

**(2)** Investigation;

**(3)** Supervision;

**(4)** Reporting to the proper authorities, or failure to so report; or

**(5)** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **a.** above.

[Ex. B, p. 19]

32.     Under the Excess Policy, the Abuse/Molestation Exclusion did not apply to USA Swimming, Inc. d/b/a USA Swimming, USA Swimming Local Swimming Committees, or the USA Swimming Foundation, Inc.:

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** 0000

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000006603900 | 01/01/17 | USA SWIMMING, INC. DBA: USA SWIMMING (SEE KR-SP-1) | |

Form CX2111, Abuse/Molestation Exclusion, does not apply to USA Swimming, Inc. d/b/a USA Swimming, USA Swimming Local Swimming Committees, (defined as administrative divisions with supervisory responsibilities within certain geographic boundaries designated by USA Swimming, Inc., the USA Swimming Foundation, Inc.

[Ex. B, p. 22]

33. Swimmers who are members of USA Swimming, as Ms. Mizelle was at all relevant times, pay dues to the organization, and a portion of these dues are used to pay for sexual abuse/molestation insurance coverage.

34. Indeed, at all relevant times, USA Swimming had a process in place for clubs, such as CAST to procure Acord 25 documents naming others, such as Titan Fitness in the underlying lawsuit, as additional insureds.

35. Indeed, the e-mail which delivered a certificate of insurance related to Capital Area Swim Team states: "this insurance document was sent to you from USA Swimming, Inc dba USA Capital Area Swim Team." An excerpt of that language contained in Exhibit D is below.

-----Original Message-----
From: certificates@prod.certificatesnow.com
[mailto:certificates@prod.certificatesnow.com]
Sent: Monday, March 20, 2017 1:54 PM
To: nhgm@fitnessconnection.com
Subject: CAPITAL AREA SWIM TEAM - Delivery by CertificatesNow

This insurance document was sent to you from USA Swimming, Inc dba USA CAPITAL AREA SWIM TEAM (
mailto:coachshannon@capitalareaswimteam.org )
(Phone: 1-919-796-3626) via CertificatesNow.

36. The relevant Acord 25 showing Capital Area Swim Team as an insured, and Titan Fitness as an additional insured is attached as part of Exhibit D. An excerpt is below:

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 03/20/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | 1-602-840-3234 | CONTACT NAME: | | |
|---|---|---|---|---|
| Risk Management Services, Inc. | | PHONE (A/C, No, Ext): (602) 840-3234 | | FAX (A/C, No): |
| P.O. Box 32712 | | E-MAIL ADDRESS: info@theriskpeople.com | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Phoenix, AZ 85064-2712 | | INSURER A : NATIONAL CAS CO | | 11991 |
| **INSURED** | | INSURER B : Nationwide Life Insurance Company | | 66869 |
| CAPITAL AREA SWIM TEAM | | INSURER C : | | |
| USA Swimming, Inc dba USA Swimming | | INSURER D : | | |
| 2116 TURTLE POINT DR | | INSURER E : | | |
| RALEIGH, NC 27604 | | INSURER F : | | |

**COVERAGES**  **CERTIFICATE NUMBER:** 49372805  **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | X | X | KK00000006603800 | 01/01/17 | 01/01/18 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | X Participant Legal | | | | | | MED EXP (Any one person) | $ 5,000 |
| | X Liability Included | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ NOLIMIT |
| | POLICY [ ] PRO-JECT [ ] [X] LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | Abuse/Molestation | $ 1,000,000 |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS [ ] SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS [ ] NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | UMBRELLA LIAB [X] OCCUR | X | X | XK00000006603900 | 01/01/17 | 01/01/18 | EACH OCCURRENCE | $ 5,000,000 |
| | X EXCESS LIAB [ ] CLAIMS-MADE | | | | | | AGGREGATE | $ 5,000,000 |
| | DED [ ] RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | | | | [ ] PER STATUTE [ ] OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| B | XS Accident-Medical | | | SPX0000027843700 | 01/01/17 | 01/01/18 | Maximum Limit | 25,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Verification of General Liability, Excess Liability & Abuse/Molestation coverage for COVERED ACTIVITIES (See Attachment) Abuse/Molestation Aggregate on the General Liability Policy is $5,000,000 Abuse/Molestation is excluded on the Excess Liability Policy. Excess Medical/Dental Accident coverage provided for members only.
* 30 Day Notice of Cancellation Per Policy Provisions* Certificate Holder is included as Additional Insured per attached ADDITIONAL INSURED ENDORSEMENT EFFECTIVE CERTIFICATE ISSUE DATE.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Fitness Connection<br><br>4120 Main at North Hills<br><br>Raleigh, NC 27609<br><br>USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>*Carolyn J. Blunt* |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)
NC-CAST
49372805

The ACORD name and logo are registered marks of ACORD

Titan000171

37.    Ms. Mizelle is an intended beneficiary of the Policies.

10

38.     Ms. Mizelle would also qualify as an Insured, since she was a dues-paying member of USA Swimming at all relevant times.

39.     The sexual abuse of athletes by their coaches is a well-known risk, particularly at elite levels.

40.     The sexual abuse of swimmers by their swim coaches is a very well-known risk.

41.     In fact, by 1986 USA Swimming was no longer able to purchase insurance on the open market because of child rape.

42.     By the time USA Swimming member Ms. Mizelle was sexually abused by her USA Swimming member coach, Nathan Weddle, USA Swimming had already spent tens of millions of dollars settling lawsuits by swimmers, mostly children and adolescents like Ms. Mizelle who had been molested and/or raped by their adult male coaches.

43.     By the time USA Swimming member Ms. Mizelle was sexually abused by her USA Swimming member coach, Nathan Weddle, USA Swimming had already been found by at least one court to have used illusory insurance policies when it came to sexual abuse/molestation coverage.

44.     USA Swimming's coverage had been the subject of extensive litigation in at least California, Indiana, and Missouri.

45.     USA Swimming has been subject to sanctions for their tactics in insurance-related litigation in multiple states.

46.     Although she is the intended beneficiary and/or one of the insureds, the Policies exclude coverage for the sexual molestation of Ms. Mizelle because her injury or

11

damage arose out of the actual abuse or threatened molestation "by anyone" while she was in the control, custody, or care of the Insured.

## V. CLAIM FOR DECLARATORY RELIEF

47. Based on the facts of the underlying lawsuit, the Policies, and insurance contract interpretation laws, Plaintiff prays for the following declaratory relief:

   a. That the Court declares the attached Policies illusory, at least with regard to coverage for sexual abuse and molestation;

   b. That the Court declares the attached Policies ambiguous, at least with regard to the coverage for sexual abuse and molestation;

   c. That the Court declares Sidney Mizelle an Insured and/or an Intended Beneficiary under the Policies;

   d. That the Court declares Defendant was obligated to defend Nathan Weddle, individually and d/b/a Capital Area Swim Team, in the underlying lawsuit;

   e. That the Court declares Defendant obligated to indemnify Nathan Weddle, individually and d/b/a Capital Area Swim Team, in the underlying lawsuit;

   f. That the Court declares Defendant obligated to pay the entirety of the judgment due and owing to Sidney Mizelle.

## MOTION TO APPOINT RECEIVER
### *In the Alternative*

48. To the extent Nathan Weddle or CAST is deemed to be the real party in interest, notwithstanding the assignment of their rights pursuant to the June 16, 2022

12

Court Order, Plaintiff hereby moves the Court for the appointment of a receiver to pursue those parties unliquidated legal claims against Defendant.

49. In support of that Motion, Plaintiff shows unto the court that she is a judgment creditor of Weddle and Capital Area Swim Team.

50. As Weddle is incarcerated, his only asset is his potential unliquidated legal claim against National Casualty for failing to defend either Weddle or CAST.

51. "[A]fter execution against a judgment debtor is returned unsatisfied[,]" receivership is allowed as a last-resort attempt "to aid creditors to reach the property of every kind subject to the payment of debts which cannot be reached by the ordinary process of execution." *Massey v. Cates*, 2 N.C. App. 162, 164, 162 S.E.2d 589, 591 (1968).

52. In the underlying action against Weddle and CAST, a writ of execution has been returned unsatisfied.

53. A Court of Equity has the inherent power to appoint a receiver, notwithstanding specific statutory authorization." *Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 576, 273 S.E.2d 247, 256 (1981) (citing *Skinner v. Maxwell*, 66 N.C. 45, 48 (1872)).

54. N.C. Gen. Stat. § 1-363 contemplates that a receiver may be appointed in order to facilitate prosecution of an unliquidated legal claim that a judgment-debtor might have against a third party. *See e.g.,* N.C. Gen. Stat. § 1-366.

55. In analyzing the reach of Section 1-363, the North Carolina Supreme Court has stated that it is an important part of the duties of the receiver to take possession

and get control of the property of the judgment debtor, whether in possession or action, as soon as practicable, and to bring all actions necessary to secure and recover such property as may be in the hands of third parties, however they may hold and claim the same.

56. In other words both statute and case law enable[] a receiver to sue those who owe the judgment debtor.

57. The authority of a receiver to pursue a judgment-debtor's legal claims is not limited solely to those claims that are otherwise assignable.

58. A receiver is a disinterested person appointed by a court . . . for the protection or collection of property that is the subject of diverse claims[.] *Receiver*, BLACK'S LAW DICTIONARY, 1296 (8th ed. 2014). Specifically, a "judgment receiver" "collects or diverts funds from a judgment debtor to the creditor. A judgment receiver is usu[ally] appointed when it is difficult to enforce a judgment in any other manner."

59. The supplemental receivership proceeding operates to allow an otherwise helpless judgment-creditor to reach the judgment-debtor's property that cannot be successfully reached by the ordinary process of execution.

60. In determining whether a judgment-creditor is entitled to have a receiver of this form appointed, the trial court need not be convinced that the defendant will prevail on her legal claim.

14

61. To warrant the appointment of a receiver, it need not appear, certainly or conclusively, that the defendant has property that he ought to apply to the judgment.

62. The appointment of a receiver is authorized so long as the party seeking the same establishes an apparent right to property.

63. Based on the plain language of the insurance policies, it is possible, and even likely, that National Casualty owed a duty to defend Nathan Weddle and/or Capital Area Swim Team in the underlying action.

64. The failure to defend Nathan Weddle and Capital Area Swim Team in the underlying action resulted in a $10 million judgment against those entities.

65. Thus, a receiver should be appointed to pursue claims of Nathan Weddle and/or Capital Area Swim Team against National Casualty related to its breach of its duty to defend, as proceeds from that claim could be utilized to satisfy, in whole or in part, the claims of Plaintiff against Nathan Weddle and/or Capital Area Swim Team.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sydney Mizelle, prays that the Court will enter judgment in her favor and against Defendant, awarding all declaratory relief, and compensatory damages as determined by a jury and as may be allowed, including attorney's fees and expenses and pre and post judgment interest, and for all other relief just and proper in the premises. Alternatively, the Plaintiff prays that the Court appoint a receiver to pursue the unliquidated legal claims of Nathan Weddle and CAST against National Casualty.

15

# JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

This the 21st Day of May, 2025.

s/Ian S. Richardson
Ian S. Richardson
Vann Attorneys, PLLC
3110 Edwards Mill Road, Suite 210
Raleigh, North Carolina 27612
T: 919-510-8585
Fax: 919-510-8570
E: irichardson@vannattorneys.com

Jessica Wegg
SAEED & LITTLE, LLP
#189 – 133 West Market Street
Indianapolis, IN 46204
T: (317) 721-9214
F: (888) 422-3151
E: jessica@sllawfirm.com
*(Pro Hac-Vice forthcoming)*

Jonathan Little
SAEED & LITTLE, LLP
#189 – 133 West Market Street
Indianapolis, IN 46204
T: (317) 721-9214
F: (888) 422-3151
E: jon@sllawfirm.com
*(Pro Hac-Vice forthcoming)*