**Sydney Mizelle**,

              Plaintiff,

v.

**National Casualty Company**,

              Defendant.

**Memorandum & Recommendation**

Plaintiff Sydney Mizelle suffered terrible abuse at the hands of her swim coach, Nathan Weddle. After obtaining a substantial state-court judgment against Weddle and Capital Area Swim Team ("CAST"), the swim club he operated as a sole proprietorship, Mizelle sought to recover that judgment under insurance policies issued by National Casualty Company. National denied coverage, and Mizelle brought this action seeking declaratory relief and damages under North Carolina's Unfair and Deceptive Trade Practices Act. National has asked the court to dismiss her action, arguing that she has failed to state a claim for relief.

Mizelle advances substantial equitable arguments for coverage. She endured serious injuries, pursued her claims, obtained a substantial judgment against the perpetrator, and now seeks a meaningful source of recovery for the trauma she has survived. This opinion does not minimize either the severity of her injuries or the practical consequences of an absence of insurance coverage. But the outcome of this case turns on the policies' language and North Carolina law. Both require the court to grant National's motion.

Although Mizelle has contractual standing to directly pursue a claim against National, she cannot establish that Weddle or CAST was insureds under the policy. As she acknowledges,

Weddle is not an insured because the policy excludes from that definition anyone who personally participated in her sexual abuse. And CAST is not an insured because North Carolina law does not recognize it as a legal entity distinct from Weddle. Instead, CAST was no more than an assumed name under which Weddle did business.

Mizelle also cannot pursue claims against National that Weddle and CAST assigned to her because the policies barred assignment without National's written consent. Although she argues in her response brief that National waived that provision, she has not alleged facts to support that argument. Her UDTPA claim also fails because it rests on National's decision to deny coverage and lacks the aggravating circumstances required under North Carolina law to elevate a breach of contract dispute into a UDTPA claim. As a result, the District Court should grant National's motion.

## I.     Background

### A.     Weddle, CAST, and Mizelle

Mizelle was a competitive swimmer with CAST, a member club of USA Swimming, Inc. Compl. ¶¶ 12, 15, *Doe* v. *USA Swimming, Inc.*, No. 18-CVS-010774 (N.C. Sup. Ct. Wake Cnty. Aug. 30, 2018), D.E. 17–1. Weddle owned and operated CAST as a sole proprietorship.[1] Cert. of Assumed Name, D.E. 17–2 at 1.

---

[1] Mizelle's amended complaint calls CAST a corporation. Am. Compl. ¶ 65. The court need not accept this legal conclusion when resolving a motion to dismiss under Rule 12(b)(6). *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). And it "may properly take judicial notice of matters of public record" in connection with a Rule 12(b)(6) motion. *Philips* v. *Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The North Carolina Secretary of State's website has no record of a corporation named Capital Area Swim Team or a corporation known as CAST that is affiliated with Weddle. *See* North Carolina Secretary of State Business Registration Search, https://sosnc.gov/online_services/search/by_title/search_Business_ Registration. And in her state-court complaint, Mizelle sued "Nathan Weddle d/b/a Capital Area Swim Team." Compl. ¶ 6, *Doe* v. *USA Swimming, Inc.*, No. 18-

Weddle also served as Mizelle's swim coach. Compl. ¶ 16, *Doe* v. *USA Swimming, Inc.*, No. 18-CVS-010774 (N.C. Sup. Ct. Wake Cnty. Aug. 30, 2018). While Mizelle was a minor swimming with CAST, Weddle sexually abused her. *Id.* ¶¶ 16 & 17.

### B.    The State Court Litigation

In 2018, Mizelle sued USA Swimming; Weddle, individually and d/b/a CAST; and several others in North Carolina state court. Am. Compl. ¶ 6, D.E. 17. Her complaint alleged that Weddle "had repeatedly sexually, physically, psychologically, and emotionally abused" her between August and December 2017. *Id.* ¶ 7. The state complaint included claims for sexual battery, negligence, gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. *Id.* at 16–27. The sexual battery claim named only Weddle, while the other claims were against all defendants. *Id.*

After trial, the jury returned a verdict in USA Swimming's favor. *Id.* ¶¶ 23 & 24. Weddle and CAST then entered into a $10,000,000 consent judgment in Mizelle's favor. Consent J. at 1, D.E. 17–3. The judgment held Weddle and CAST jointly and severally liable. *Id.* As part of the consent judgment, Weddle and CAST assigned Mizelle any rights they possessed against third parties related to the claims in the action, including potential rights under applicable insurance policies. Am. Compl. ¶ 30.

Weddle is now incarcerated for his crimes against Mizelle and lacks sufficient assets to satisfy the judgment. Am. Compl. ¶ 28.

---

CVS-010774 (N.C. Sup. Ct. Wake Cnty. Aug. 30, 2018), D.E. 17–1. The Certificate of Assumed Name included with her amended complaint also reflects that CAST was merely an assumed name that Weddle used to conduct business. Cert. of Assumed Name, D.E. 17–2 at 1. These items all indicate that Weddle operated CAST as a sole proprietorship, not a corporation. And Mizelle has conceded that this was the case when the abuse occurred. Feb. 24, 2026 Hr'g Tr. at 14:23–15:1, D.E. 27. ("The abuse . . . happened when there was a sole proprietorship in place."). Thus, this opinion will treat CAST as a sole proprietorship.

### C.	The National Casualty Insurance Policies

At the time of the events underlying the state-court action, National had issued both a Commercial General Liability Policy and a Commercial Excess Policy to USA Swimming. *Id.* Ex. B at 5, 114, D.E. 17–2. In addition to USA Swimming, the policies identified its member clubs, member coaches, group members, and officials as named insureds. *Id.* at 8, 116.

The General Liability Policy provided coverage for damages incurred due to bodily injury caused by an "occurrence," which the policy defined as an "accident." *Id.* at 133 §§ I(A)(1)(a) & I(A)(1)(b)(1), 145 § V(3), 147 § V(13). The policy also excluded coverage for bodily injury "expected or intended from the standpoint of the insured." *Id.* at 134 § I(A)(2)(a).

It also included a Sexual Abuse Endorsement. That endorsement provided coverage for certain damages arising from sexual abuse, molestation, exploitation, or injury by an insured. *Id.* at 165 § 1. But the Endorsement excluded from the definition of "insured" any person who personally participated in sexual abuse or who failed to act after obtaining personal knowledge of such abuse. *Id.*

Additionally, the General Liability Policy contained provisions requiring National's written consent before any assignment of rights or duties, requiring the policy to apply separately to each insured against whom a claim was asserted, and allowing a person with a judgment against an insured to sue National for payment. *Id.* at 117 Common Policy Conditions § F, 143–44 § IV(3), 145 § IV(7).

The Excess Policy adopts the same coverage provisions, exclusions, and limitations as the General Liability Policy. Commercial Excess Liability Coverage Form, Am. Compl. Ex. B at 12.

4

### D. The Federal Lawsuit

National neither defended Weddle and CAST in the state-court lawsuit nor indemnified them for the resulting judgment. Am. Compl. ¶ 25. After National rejected Mizelle's request that it satisfy the judgment, she filed this action seeking declaratory relief and monetary damages.

Mizelle asks the court to declare, among other things, that National had a duty to defend and indemnify Weddle and CAST and that it must satisfy the judgment entered against them. Am. Compl. ¶ 66. She also asserts a claim under North Carolina's Unfair and Deceptive Trade Practices Act for National's dealings with her and its refusal to satisfy the judgment. *Id.* ¶¶ 67–76.

National has moved to dismiss the amended complaint. D.E. 19. The court held a hearing on the motion in February 2026.

## II. Discussion

National challenges Mizelle's amended complaint on two grounds. To begin with, it says that she lacks standing because she is not an insured or a third-party beneficiary and she cannot validly pursue claims on behalf of Weddle or CAST. It then argues that Mizelle has failed to state a claim because she was not an insured under the policy, the policy does not provide coverage for Weddle and CAST, and she has not plausibly alleged a claim under North Carolina's Unfair and Deceptive Trade Practices Act. Mizelle disagrees and argues that her claims should proceed.

After setting out the governing standards, the court first addresses Mizelle's declaratory judgment claims and then turns to her UDTPA claim.

### A. Legal Standard

National frames its motion as challenging both the court's subject-matter jurisdiction to hear Mizelle's claim and the sufficiency of her allegations. Its jurisdictional argument claims that because she is not a party to the policies or a third-party beneficiary of them, she lacks standing to pursue her claims.

But National's argument concerns contractual standing, which is distinct from the standing required by Article III of the Constitution. Disputes about contractual standing do not implicate subject-matter jurisdiction. *Maxim Crane Works, L.P.* v. *Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021). "Article III standing speaks to the power of a court to adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract." *SM Kids, LLC* v. *Google, LLC*, 963 F.3d 206, 211 (2d Cir. 2020). So a dispute about who may sue under a contract concerns the merits of the claim and whether the plaintiff has stated a claim, not whether the court possesses jurisdiction. *Maxim Crane Works*, 11 F.4th at 350. For this reason, this opinion analyzes National's motion under Rule 12(b)(6).

The Supreme Court has explained that to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The Court noted that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, while a court must accept all the factual allegations in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory or mere formulaic recitations of the elements of a claim. *Id.* at 679. Then, taking the remaining factual allegations as true, the court must determine whether the complaint "plausibly gives rise to an entitlement to relief." *Id.* (quotation modified). If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quotation modified). If a party fails to show entitlement to relief, the court must dismiss the deficient claims. *Id.*

**B.      Insurance Policy Interpretation Principles**

Resolving this motion requires interpreting the provisions of the policies that National issued to USA Swimming. Both parties assert that North Carolina law controls this question. When addressing an issue governed by state law, a federal court must "'predict' how the Supreme Court of North Carolina would rule on that issue." *Knibbs* v. *Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (quoting *Rhodes* v. *E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011)). That inquiry begins with any controlling decisions from the State's highest court. *Stahle* v. *CTS Corp.*, 817 F.3d 96, 100 (4th Cir. 2016). If that court has not spoken, a federal court may consider opinions from the state's intermediate appellate court, treatises, "and 'the practices of other states.'" *Twin City Fire Ins.* v. *Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 369 (4th Cir. 2005) (quoting *Wade* v. *Danek Med., Inc.*, 182 F.3d 281, 286 (4th Cir. 1999)). But the court's role remains a limited one. It must "respond conservatively when asked to discern governing principles

7

of state law." *Rhodes,* 636 F.3d at 79–80. And it "should not create or expand [a] State's public policy." *St. Paul Fire & Marine Ins.* v. *Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995).

Under North Carolina law, courts give insurance-policy terms their plain and ordinary meaning, as understood by a reasonable person in the insured's position. *Gaston Cnty. Dyeing Mach. Co.* v. *Northfield Ins.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000). If an insurance contract's terms are unambiguous, "the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." *Crockett* v. *First Fed. Sav. & Loan Ass'n*, 289 N.C. 620, 631, 224 S.E.2d 580, 588 (1976). But if an insurance contract contains ambiguous terms, "any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company." *Wachovia Bank & Tr. Co.* v. *Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). A dispute over meaning does not, by itself, make a policy term ambiguous. *Id.* Instead, an ambiguity exists only if "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.*

### C.      Declaratory Judgment Claims

Mizelle's first claim arises under the federal Declaratory Judgment Act. That Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Mizelle's declaratory judgment claims can be grouped into two categories. The first involves her effort to enforce her own rights under the judgment. Am. Compl. ¶¶ 66(a), (b), (c), (f). The second involves Weddle's and CAST's rights under the insurance policy. *Id.* ¶¶ 66(a),(b),(d),(e).

National challenges her ability to pursue both types of claims. It initially argues that she lacks standing to pursue these contract-based claims because she is not an insured under the policy, is not a third-party beneficiary, and does not have a valid assignment from Weddle and CAST. Failing that, however, National contends the declaratory judgment claims should be dismissed because the policies are not ambiguous or illusory and do not provide coverage for her claims.

This opinion begins by discussing the standing issue and then moves on to address whether she has stated a claim for relief.

### 1. Contractual Standing

National challenges whether Mizelle can seek a declaratory judgment based on her own rights under the policy or rights Weddle and CAST assigned to her. Since the General Liability Policy allows a person with a judgment against an insured to sue National to recover on that judgment, Mizelle can pursue her claims that the policy provided coverage for her injuries. But she cannot pursue the claims Weddle and CAST assigned to her because the policy required National to consent in writing to that assignment and it did not.

### a) Attempt to Enforce Her Own Rights

National argues that Mizelle lacks contractual standing to bring claims regarding her rights under the policies because she is not an insured or an intended beneficiary. Mem. in Supp. at 20. National's argument, however, ignores the General Liability Policy's language. The policy provides that a person may sue National "to recover on an agreed settlement or on a final judgment against an insured[.]" Am. Compl. Ex. B at 143–44 § IV(3). While the parties dispute whether Weddle and CAST qualify as insureds, this language is sufficient for Mizelle to seek a declaratory

judgment on that question. As a result, National is not entitled to have Mizelle's declaratory judgment claims seeking to enforce her own rights dismissed.[2]

### b) Attempt to Enforce Rights Assigned by Weddle and CAST

Mizelle also seeks to enforce the rights that Weddle and CAST assigned to her as part of the consent judgment. She says that the assignment allows her to step into their shoes and sue National for failing to defend and indemnify them in the state-court action. National argues that the assignment was invalid. It says that North Carolina law prohibits such assignments and that the policy's language prohibited this one. Mizelle disagrees and argues that National waived its ability to assert the anti-assignment provision by not asserting it before the court entered the consent judgment. This opinion discusses each of these arguments in turn.

### (1) Champerty

National argues that Weddle's assignment to Mizelle was invalid because it violates North Carolina's prohibition on champerty. Champerty is a common-law doctrine that generally prohibits the assignment of personal tort claims to a third party.[3] *Horton* v. *New S. Ins. Co.*, 122 N.C. App. 265, 268, 468 S.E.2d 856, 858 (1996). This prohibition, however, does not apply to contract-based claims. *Id. at* 269, 468 S.E.2d at 858.

Here, Weddle assigned "any of [his] rights against any third parties or entities related to the claims in this action, to the extent permitted by law." Consent J. at 1. Since champerty does not apply to contract-based claims, it did not prohibit Weddle and CAST from assigning their

---

[2] Given this conclusion, this opinion need not address whether she was an insured or a third-party beneficiary of the policies.

[3] The doctrine, however, does not prohibit assignment of the proceeds of a personal tort claim. *Charlotte-Mecklenburg Hosp. Auth.* v. *First of Ga. Ins. Co.*, 340 N.C. 88, 91, 455 S.E.2d 655, 657 (1995).

contract-based claims against National to Mizelle. National's argument on this point is unpersuasive and should be rejected by the court.

### (2) Anti-Assignment Provision

National also maintains that the assignment was invalid because it violates the General Liability Policy's anti-assignment provision. That provision requires National's written consent before an insured transfers its rights to a third party. Am. Compl. Ex. B at 117. Since National did not consent to the assignment, in writing or otherwise, it contends the assignment is invalid. Mizelle does not contest the absence of National's written consent. Instead, she argues that National waived this argument because it was aware of Weddle's and CAST's intent to assign their claims to her but did not object to the inclusion of that term in the consent judgment.

Under North Carolina law, "contracts are freely assignable unless prohibited by statute, public policy, or the terms of the contract." *Parkersmith Props.* v. *Johnson*, 136 N.C. App. 626, 631, 525 S.E.2d 491, 494 (2000) (citing *Kraft Foodservice, Inc.* v. *Hardee*, 340 N.C. 344, 348, 457 S.E.2d 596, 598 (1995)). And "provisions in bilateral contracts that forbid or restrict assignment of the contract without the consent of the obligor are generally valid and enforceable." *Id.* (citation omitted). So the General Liability Policy's anti-assignment provision is valid and enforceable under North Carolina law.

But North Carolina law also recognizes that a contractual provision "may be modified or waived . . . by conduct which naturally and justly leads the other party to believe the provisions of the contract have been modified or waived." *Son-Shine Grading, Inc.* v. *ADC Const. Co.*, 68 N.C. App. 417, 422, 315 S.E.2d 346, 349 (1984). Mizelle claims that National waived the anti-

11

assignment provision by failing to object to the inclusion of the assignment language in the consent judgment. Resp. in Opp'n at 12–13, D.E. 23.

The record, however, does not support her position. Her amended complaint contains no factual allegations about waiver, so the court cannot rely on that theory in resolving a Rule 12(b)(6) motion. *Doe* v. *United States*, 381 F. Supp. 3d 573, 606 (M.D.N.C. 2019) ("Courts generally do not consider a plaintiff's factual or legal allegations raised in opposition to a motion to dismiss and not alleged in the complaint."). Even if the court could look beyond her pleadings, Mizelle did not provide an affidavit, declaration, or documentary evidence to support her assertion. Instead, she relies on her counsel's arguments, which do not qualify as evidence. *Morrissey* v. *William Morrow & Co.*, 739 F.2d 962, 967 (4th Cir. 1984); *Erway* v. *U.S. Transp. Sec. Admin.*, No. 5:20-CV-00141-M, 2020 WL 6370981, at *5 (E.D.N.C. Oct. 9, 2020) ("[A]n attorney's unsworn statement does not constitute evidence of anything"). Since Mizelle has not plausibly alleged a waiver of the anti-assignment provision, the district court should conclude that the assignment from Weddle is invalid and dismiss her declaratory judgment claims based on Weddle's contractual rights.[4]

### 2.    Merits of the Declaratory Judgment Act Claim

The sufficiency of Mizelle's declaratory judgment claims also turns on two issues. The first issue is whether Mizelle can directly recover under the policy. And the second issue is whether she can recover through the rights assigned to her by Weddle and CAST.[5]

---

[4] Even if Mizelle had alleged National's knowledge of the assignment, North Carolina courts have rejected similar waiver and estoppel arguments where the party seeking to enforce an assignment knew the contract required written consent and knew that consent had not been given. *Parkersmith Props.* v. *Johnson*, 136 N.C. App. 626, 634, 525 S.E.2d 491, 496 (2000).

[5] Although this opinion concluded that she does not have contractual standing to pursue these claims, it addresses the merits of the parties' arguments as an alternative basis for decision.

### a) Whether Mizelle is Entitled to Recover Under the Policies

According to the General Liability Policy's terms, Mizelle would need to show three things to be entitled to payment for the consent judgment. First, there must be an agreed settlement or a final judgment entitling her to damages. Am. Compl. Ex. B at 143–144 § IV(3). Second, the settlement or judgment must be against an insured as that term is defined in the policies. *Id.* And third, the policies must cover the damages. *Id.* While the parties agree that Mizelle obtained a judgment against Weddle and CAST, they dispute whether CAST qualifies as an insured.

Mizelle's amended complaint points to the Sexual Abuse Endorsement as a potential source of coverage. That Endorsement obligates National to "pay those sums that the insured becomes legally obligated to pay as damages because of" injuries suffered by another person as a result of sexual abuse, molestation, exploitation, or injury. *Id.* at 8 § 1. But it then says that "[a]n insured shall not include any person that personally participated in committing any sexual abuse . . . or who failed to take action to prevent recurrence after having personal knowledge of any sexual abuse[.]" *Id.*

The parties disagree about whether CAST qualifies as an insured under the Endorsement.[6] According to Mizelle, CAST is an entity rather than a person, so it could not have personally participated in her abuse. So she maintains that the Endorsement provides coverage for her injuries. National responds by arguing that since CAST is a sole proprietorship, it is legally indistinguishable from Weddle and thus cannot qualify as an insured.

The difficulty for Mizelle is that, as a matter of law, CAST does not exist as a separate legal entity. It is simply a trade name that Weddle used to conduct business. *See Jeroski* v. *Fed.*

---

[6] Mizelle conceded during the hearing on this motion that Weddle would not qualify as an insured under the Sexual Abuse Endorsement because of his personal involvement in her sexual abuse. Hr'g Tr. at 11:8–25.

*Mine Safety & Health Rev. Comm'n*, 697 F.3d 651, 652 (7th Cir. 2012) ("A proprietorship is not a legal entity, but merely a name under which the owner, who is the real party in interest, does business."). State and federal courts have repeatedly recognized that a sole proprietorship has no legal distinction apart from its owner and that a person's or business's use of the words "doing business as" does not create a new legal entity. *RZS Holdings AVV* v. *PDVSA Petroleo S.A.*, 506 F.3d 350, 354 n.4 (4th Cir. 2007); *Snowden* v. *CheckPoint Check Cashing*, 290 F.3d 631, 635 n.2 (4th Cir. 2002); *Whipple* v. *Marcuse*, No. 3:24-CV-00325, 2024 WL 3761276, at *3 (W.D.N.C. Aug. 12, 2024); *Vient* v. *Paxton Media Grp.*, No. 1:19-CV-2, 2022 WL 204570, at *12 (M.D.N.C. Jan. 24, 2022), *adopted by,* 2022 WL 939820 (M.D.N.C. Mar. 29, 2022); *N.C. Farm Bureau Mut. Ins. Co., Inc.* v. *Strickland's Auto & Truck Repairs, Inc.*, No. 1:19-CV-513, 2021 WL 633646, at *5 (M.D.N.C. Feb. 18, 2021) *adopted by,* 2021 WL 848707 (M.D.N.C. Mar. 5, 2021); *Gravelle* v. *Kaba Ilco Corp.*, No. 5:17-CV-00207, 2018 WL 10604736, at *4 n.9 (E.D.N.C. Mar. 6, 2018); *Haynie* v. *Cobb*, 207 N.C. App. 143, 145, 698 S.E.2d 194, 196 (2010); *Liss* v. *Seamark Foods*, 147 N.C. App. 281, 286, 555 S.E.2d 365, 369 (2001); *Bushey* v. *N. Assur. Co. of Am.*, 362 Md. 626, 637, 766 A.2d 598, 604 (2001) (citing cases); *Faber Indus., Ltd.* v. *Witek*, 126 N.C. App. 86, 87–88, 483 S.E.2d 443, 444–45 (1997); *Tyson* v. *L'Eggs Prods., Inc.*, 84 N.C. App. 1, 6, 351 S.E.2d 834, 837 (1987).[7] These authorities establish that Weddle conducted business through

---

[7] Reinforcing this conclusion is the fact that under North Carolina law, since a sole proprietorship lacks a legal existence apart from its owner, it cannot be sued separately, and a judgment cannot be enforced against it. The North Carolina Court of Appeals has explained that "[t]he defendant in a civil action must be an existing legal entity, either natural or artificial." *Rollins* v. *Junior Miller Roofing Co.*, 55 N.C. App. 158, 163, 284 S.E.2d 697, 701 (1981) (citing *Nelson* v. *Relief Dep't*, 147 N.C. 103, 60 S.E. 724 (1908)). And, as a result, a defendant who "is not a legal person . . . is not capable of being sued." *Doe* v. *Bayer Corp.*, 344 F. Supp. 2d 466, 469 (M.D.N.C. 2004). Similarly, the Supreme Court of North Carolina has held that a judgment against a defendant who is not a natural person, a corporate body, or some other recognized legal entity, "is, in the eye of the law, an 'airy nothing[,]'" and cannot be enforced against that defendant. *Nelson*, 147 N.C. 103, 60 S.E. at 724. This principle is not unique to North Carolina law as courts across the country have recognized same rule. *See Bartlett* v. *Heibl,* 128 F.3d 497, 500 (7th Cir. 1997); *Rosedale Attractions & Shows Inc.* v. *Long*, No. 8:18-CV-03416-PWG, 2019 WL 3860319, at *2 (D. Md. Aug. 15, 2019); *Dye*

14

CAST as an assumed name, not as a legally distinct entity. So, lacking a legal existence, CAST cannot be considered an insured under the policies. *See Nelson* v. *Relief Dep't*, 147 N.C. 103, 60 S.E. 724, 724 (1908) (explaining that an entity that is "neither a natural nor an artificial being . . . .has no power to contract. Any contract made in its name would be the contract of the individual assuming to act for it[.]").

Mizelle argues that the General Liability Policy's Separation of Insureds clause requires CAST to be treated as a separate insured from Weddle. But that clause governs how coverage applies when there are multiple insureds. It does not (and cannot) create a separate legal entity that state law does not recognize. Thus, CAST cannot be treated as separate from Weddle for purposes of the Sexual Abuse Endorsement.

What's more, recognizing CAST as a separate entity would frustrate the operation of the Sexual Abuse Endorsement. The Endorsement excludes from the definition of "insured" any person who personally participated in sexual abuse. Mizelle concedes that Weddle falls outside that definition. Since CAST was merely Weddle doing business under another name, Weddle remained personally liable for obligations incurred in CAST's name. *See* N.C. Corp. Law & Prac. § 1:4 (4th ed.) (Aug. 2025 Update); *Duncan* v. *Duncan*, No. 1:12-CV-00262, 2015 WL 1475723, at *1 n.1 (M.D.N.C. Mar. 31, 2015); *Littriello* v. *United States*, 484 F.3d 372, 375 (6th Cir. 2007) (noting that in a sole proprietorship, "a single individual owns all the assets, is liable for all debts, and operates in an individual capacity"). If the Endorsement treated CAST as a separate insured,

---

v. *City of Bloomington, Indiana*, 580 F. Supp. 3d 560, 569–70 (S.D. Ind. 2022); *Ricketts* v. *CBS Corp.*, No. CV193895DSFMRWX, 2020 WL 7501975, at *3 (C.D. Cal. June 18, 2020); *Mason* v. *Sailormen Inc.*, No. 4:11-CV-637 CAS, 2012 WL 1957413, at *3 (E.D. Mo. May 31, 2012); *Nova Exp.* v. *United States*, 80 Fed. Cl. 236, 238–39 (2008); *Borah* v. *Monumental Life Ins. Co.*, No. CIV.A. 04–3617, 2005 WL 351040, at *2 (E.D. Pa. Feb. 14, 2005).

15

it would allow Weddle to obtain indirectly, through his trade name, coverage it denies him directly. Nothing in the policies suggests that the parties intended that result.

Alternatively, Mizelle argues that if the policy does not provide coverage here, then it is illusory.[8] National disagrees, saying that Mizelle has not met the high standard for showing that a contract is illusory.

The North Carolina Supreme Court has said that "[a] contract is illusory when the promisor 'reserve[s] an unlimited right to determine the nature or extent of his performance.'" *Canteen* v. *Charlotte Metro Credit Union*, 386 N.C. 18, 27, 900 S.E.2d 890, 897 (2024) (quoting *State* v. *Philip Morris USA Inc.*, 363 N.C. 623, 641–42, 685 S.E.2d 85, 96 (2009)). A contract that allows a party to perform or not on a "whim" is illusory and void. *RLM Comms.* v. *Tuschen*, 66 F. Supp. 3d 681, 692 (E.D.N.C. 2014) (quotation omitted). So a contract generally cannot give a promisor the option to unilaterally not perform its end of a bargain. *Id.* (quoting *BCD LLC* v. *BMW Mfg. Co., LLC*, 360 F. App'x 428, 435 (4th Cir. 2010)).

Put another way, "[a]n illusory insurance contract is one without benefit to the insured, as when it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons, rendering the contract void for lack of consideration." 44 Am. Jur. 2d *Insurance* § 253 (Feb. 2026 Update). But "narrow coverage in and

---

[8] Mizelle's argument on this point appears to have shifted after she filed her amended complaint. In the amended complaint, she seeks a declaratory judgment that the policy is illusory based on the language in the body of the General Liability Policy. *See* Am. Compl. ¶ 66a. She does not appear to seek a declaratory judgment that the language of the Sexual Abuse Endorsement is illusory. Yet her response in opposition to the motion to dismiss attacks the Endorsement as illusory. Since a party may not amend their complaint through a response to motion to dismiss, *S. Walk at Broadlands Homeowner's Ass'n* v. *OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013), this argument is not properly before the court and should be rejected. This opinion will, however, address the substance of her argument with respect to the Endorsement.

16

of itself is not illusory[.]" *Wake Cnty. Hosp. Sys., Inc.* v. *Safety Nat'l Cas. Corp.*, 127 N.C. App. 33, 43–44, 487 S.E.2d 789, 795 (1997).

The Endorsement provides meaningful coverage in readily identifiable circumstances. For example, it would cover abuse by a CAST employee other than Weddle if he lacked personal knowledge of the abuse or knew of it and acted to address it. Mizelle acknowledged this point at a motion hearing. Hr'g Tr. at 36:20–37:9. Since there are circumstances in which the policies provide coverage, the policies are not illusory.

Mizelle has not plausibly alleged entitlement to declaratory relief under the policies. The district court should grant National's motion with respect to these claims and dismiss them.

  **b)**  **Whether National had a Duty to Defend or Indemnify Weddle or CAST**

Mizelle also seeks a declaratory judgment establishing that National had a duty to defend Weddle and CAST in the underlying litigation and to indemnify them for the judgment she obtained. This opinion first addresses the duty to defend and then the duty to indemnify.

The duty to defend and the duty to indemnify are distinct. *Penn Am. Ins. Co.* v. *Valade*, 28 F. App'x 253, 258 (4th Cir. 2002); *Craige* v. *GEICO*, 503 F. Supp. 3d 365, 372 (M.D.N.C. 2020). And the duty to defend is broader than the duty to indemnify. *Allstate Ins. Co.* v. *Bates*, 185 F. Supp. 2d 607, 610 (E.D.N.C. 2000).

The duty to defend is triggered by the allegations in the complaint. *Waste Mgmt. of Carolinas, Inc.* v. *Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). But the complaint must allege injuries covered by the policy. *Harleysville Mut. Ins. Co.* v. *Buzz Off Insect Shield, LLC*, 364 N.C. 1, 7, 692 S.E.2d 605, 610–11 (2010). To make this determination, the court examines the pleading "side-by-side with the policy to determine whether the events as alleged are

17

covered or excluded." *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 378. Any ambiguity is construed in favor of coverage. *Universal Underwriters Ins. Co.* v. *Lallier*, 334 F. Supp. 3d 723, 731 (E.D.N.C. 2018) (quoting *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 377).

While the duty to defend inquiry looks to the complaint's allegations, the duty to indemnify inquiry compares the "facts as determined at trial . . . to the language of the insurance policy." *Harleysville*, 364 N.C. at 7, 692 S.E.2d at 611. "If the insurance policy provides coverage for the facts as found by the trier of fact, then the insurer has a duty to indemnify." *Id.*

The state-court complaint did not trigger a duty to defend because it did not allege facts that, if proved, would fall within the General Liability Policy's coverage. Its allegations about Weddle's personal involvement in Mizelle's abuse preclude coverage for him for the reasons discussed above. And while that pleading mentioned CAST, it also identified CAST as the trade name Weddle used to conduct business. Compl. ¶ 6, *Doe* v. *USA Swimming, Inc.*, No. 18-CVS-010774 (N.C. Sup. Ct. Wake Cnty. Aug. 30, 2018) (identifying as a defendant "Nathan Weddle d/b/a Capital Area Swim Team"). That allegation showed, on the face of the pleading, that there was no legal distinction between Weddle and CAST. As discussed above, that lack of legal distinction precludes coverage for CAST under the policies. For the same reason, the state-court judgment did not create a duty to indemnify Weddle or CAST. Thus, the district court should dismiss Mizelle's declaratory judgment claims related to Weddle's and CAST's rights under the policies.

### D. Unfair and Deceptive Trade Practices Claim

Mizelle also claims that National's refusal to satisfy her judgment against Weddle violates North Carolina's Unfair and Deceptive Trade Practices Act. National again argues that Mizelle lacks standing and that her allegations fail to state a claim for relief.

#### 1. Standing

National makes two arguments against Mizelle's standing to pursue her UDTPA claim. To begin with, it argues that she cannot pursue the claim because she is not an insured or an intended beneficiary under the policies. Then National contends that the claim is premature because no court has determined that National was obligated to satisfy the consent judgment. National cites no authority to support either position, and the court does not find them persuasive. The amended complaint satisfies Article III's standing requirement, so the court addresses the merits of the UDTPA claim.

#### 2. Merits of the UDTPA Claim

National also argues that Mizelle has failed to state a claim under the UDTPA. It maintains that she has not alleged sufficient aggravating circumstances to convert a breach of contract claim into a UDTPA claim. Mizelle responds that her allegations are sufficient.

North Carolina prohibits unfair and deceptive trade practices and provides a private right of action against those who engage in them.[9] N.C. Gen. Stat. § 75–1 *et seq.*; *Elliott* v. *Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018). To state a claim under North Carolina's UDTPA, a plaintiff must plausibly allege three things. *Rutledge* v. *High Point Reg'l Health Sys.*, 558 F. Supp.

---

[9] North Carolina also has a separate statute that deals with unfair practices in the settlement of insurance claims. See N.C. Gen. Stat. § 58–63–15(11). Mizelle has not relied on that statute to support her UDTPA claim.

2d 611, 619 (M.D.N.C. 2008) (citations omitted). First, there must be an unfair or deceptive practice. *Id.* "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Dalton* v. *Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citing *Polo Fashions, Inc.* v. *Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). Second, the practice must affect commerce. *Id.* And finally, the plaintiff must be injured by the act. *Id.*

Mizelle's claim is based on National's refusal to acknowledge coverage for her injuries. But under North Carolina law, an insurer's denial of coverage, without more, is not an unfair or deceptive trade practice. *Hancox* v. *State Farm Auto. Ins. Co.*, 642 F. Supp. 3d 514, 523 (E.D.N.C. 2022). Nor has she alleged aggravating circumstances that would give rise to liability under the Act. Since she has failed to plausibly allege that National engaged in an unfair or deceptive act or practice, the district court should dismiss this claim.

### III.    Conclusion

While there is no doubt about the seriousness of Mizelle's injuries, this opinion must adhere to the policies' language and North Carolina law in resolving National's motion. The amended complaint does not plausibly allege that Weddle or CAST are insureds under the policies, that Mizelle obtained a valid assignment, or that National's denial of coverage amounted to an unfair or deceptive trade practice. The district court should therefore grant National's motion (D.E. 19) and dismiss Mizelle's amended complaint (D.E. 17).

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other

party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated:  May 14, 2026

_____
Robert T. Numbers, II
United States Magistrate Judge